IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KIMBERLY A. DOMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No.  11-1310-JAR |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant

Commissioner of Social Security denying Plaintiff Kimberly Domann's applications for

disability benefits under Title II of the Social Security Act[1] and supplemental security income

benefits under Title XVI of the Social Security Act.[2]   Upon *de novo* review, the Court affirms

the decision of the Commissioner.

## I.      Procedural History

On March 4, 2009, Plaintiff applied for disability and disability insurance benefits; and

on March 23, 2009, Plaintiff applied for supplemental security income benefits.  Both

applications claimed an onset date of February 22, 2007.   Plaintiff's applications were denied

initially and upon reconsideration.  Plaintiff timely requested a hearing before an administrative

law judge ("ALJ").  After a hearing, the ALJ issued a decision finding that Plaintiff was not

disabled; the Appeals Council denied Plaintiff's request for review of the ALJ's decision.

---

[1] 42 U.S.C. §§ 401–434.

[2] 42 U.S.C. §§ 1381–1383f.

Plaintiff then timely sought judicial review before this Court.

## II.   Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[3]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  In the course of its review, the Court may not re-weigh the evidence or substitute its judgment for that of Defendant.[5]

## III.   Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7]  The Secretary has established a five-step sequential evaluation process to determine whether a claimant is

---

[3]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4]*Id*. (quoting *Castellano*, 26 F.3d at 1028).

[5]*Id.*

[6]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[7]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

disabled.[8]  If the ALJ determines the claimant is disabled or not disabled at any step along the

way, the evaluation ends.[9]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not

engaged in substantial gainful activity[10] since February 22, 2007, the alleged onset date.  Nor

does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe"

impairments: degenerative disc disease, L-5; central disc protrusion; asthma; bipolar disorder;

depression; anxiety; posttraumatic stress disorder; borderline personality disorder; and obesity.

But Plaintiff challenges the ALJ's determinations at steps three, four and ultimately, step five,

where the ALJ concluded that although Plaintiff could not perform past relevant work, she could

perform other work that exists in significant numbers in the national economy.

## IV.    Discussion

### A. Mental impairments

The ALJ determined at step three that Plaintiff's mental impairments either singly or in

combination did not meet or medically equal the criteria of listings 12.04, 12.06 or 12.08.  The

ALJ found that Plaintiff had only mild restrictions in activities of daily living and only moderate

difficulties in social functioning as well as concentration, persistence or pace, and thus failed to

meet the requirements of "paragraph B" that she have marked restrictions and difficulties and/or

episodes of decompensation.   At step four, the ALJ determined Plaintiff's Residual Functional

Capacity (RFC), and found that Plaintiff's ability is "limited to simple, routine, and repetitive

---

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[9]*Id.*

[10]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

tasks; no interaction with the general public; and only occasional interaction with coworkers and supervisors with no tandem tasks involved when working with a co-worker."

The ALJ's determination at step three was based on her giving "substantial weight" to the opinion of the state agency psychological consultant, Carol L. Adams, and in fact "incorporat[ing] Dr. Adam's rationale for her opinions," as fully set forth in Dr. Adam's report. Dr. Adams opined that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures, her ability to understand and remember very short and simple instructions, her ability to carry out very short and simple instructions, and her ability to maintain attention, concentration, persistence and pace.  Dr. Adams opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions.  Dr. Adams also opined that Plaintiff was not significantly limited in her ability to respond and adapt to changes in the work setting, normal hazards and precautions, nor in her ability to travel, use public transportation as well as set realistic goals and independently make plans.  Dr. Adams further opined that Plaintiff was not significantly limited in her social interaction, except she was moderately limited in her ability to interact appropriately with the general public.

Dr. Adams provided a narrative explanation of these opinions[11] which indicated that Dr. Adams had considered Plaintiff's self-reported history, Dr. Mintz's mental status examination, as well as Plaintiff's self-reported activities.  Plaintiff reported to Dr. Adams that she takes care of her daughter, but that Plaintiff's mother takes care of the daughter for part of the afternoon when Plaintiff "requires rest due to physical issues."  Plaintiff did not report that her mental limitations affect her ability to care for her daughter, only her physical limitations.   Plaintiff further

_____

[11]Tr. 483.

reported to Dr. Adams that she cooks fast meals, depending on her pain, complete chores as pain allows, drives and shops, but prefers to stay home due to anxiety.   Plaintiff reported that she needs reminders to pay bills, is able to follow written instructions but has difficulty retaining spoken instructions.  Plaintiff also reported to Dr. Adams, and it was confirmed by Dr. Adams's review of the Guidance Center records, that Plaintiff had become argumentative on the job and had been let go for insubordination and lack of cooperation.

The ALJ's determination at step four was based on her giving "great weight" to the opinion of Stanley Mintz, Ph.D, who performed a consultative psychological examination of Plaintiff.   Dr. Mintz examined Plaintiff on June 24, 2009, taking relevant history, interviewing Plaintiff about her daily activities, and performing a mental status examination.  He found that Plaintiff had no psychoses, hallucinations or delusions, nor symptoms of bipolar or PTSD.  He noted that Plaintiff appeared depressed and anxious and described panic attack symptoms, but did not appear phobic or obsessive/compulsive.  Dr. Mintz found that Plaintiff "appears to function within the average intellectual range with no indications of mental retardation nor of a cognitive disorder."  He found her memory processes, verbal abstraction, formal judgment, reasoning capacity and immediate attention span capabilities intact.  Based on his examination, Dr. Mintz found that Plaintiff is capable of understanding simple and intermediate instructions, can relate "fairly well" to co-workers and supervisors, and is capable of handling her own funds. He found however, that Plaintiff "appears very immature," and "[h]er concentration capacity appears may be limited by depression and anxiety symptoms."  Notably, Dr. Mintz found that Plaintiff's GAF was 55, and that her highest GAF in the past year was 60.

Plaintiff urges that the ALJ erred in giving substantial weight to the opinions of Dr.

Adams, a psychologist who neither treated nor examined Plaintiff, and Dr. Mintz, a psychologist who examined but did not treat Plaintiff, while giving little weight to the opinion of Dr. Dight, Plaintiff's treating psychologist.  Dr. Dight, who first examined Plaintiff in 2007, and began treating her on regular basis on October 31, 2009, opined that Plaintiff has marked limitations in her ability to understand and remember detailed instructions and moderate limitations with short and simple instructions.  Dr. Dight also opined that Plaintiff had extreme limitations in: her ability to maintain concentration and attention for extended periods; her ability to work at a consistent pace without an unreasonable number or length of rest periods; her ability to or perform activities requiring a regular schedule, attendance and punctuality, or complete a normal workday or workweek without interruption from her psychological problems; and in her ability to work in coordination or close proximity to other people without distraction.  Dr. Dight opined that Plaintiff was extremely limited in her ability to interact with the general public, accept instructions and criticism from supervisors, or get along with coworkers or peers.  She also opined that Plaintiff was extremely limited in her ability to respond and adapt to changes in the work setting, or to set realistic goals and independently make plans, as well as marked limitations in her ability to be aware of normal hazards and precautions, as well as her ability to travel or use public transportation.  Dr. Dight also offered an opinion that Plaintiff is incapable of obtaining or maintaining employment.

As the ALJ noted, any medical source's opinion of disability or employability is not dispositive.[12]  Final responsibility for determining ultimate issues, such as a claimant's RFC and

---

[12]*Castellano v. Sec. of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

whether a claimant is disabled, are reserved to the Commissioner.[13]  However, with respect to issues other than the ultimate issues, a treating source's opinion may be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, but if it is "deficient in either respect, it is not entitled to controlling weight."[14]  Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference."[15]  Here the ALJ declined to give Dr. Dight's opinion controlling weight, and in fact expressly accorded Dr. Dight's opinion "little weight," because the ALJ found that Dr. Dight's opinion was "inconsistent with other opinions that have been given greater weight," and was "not supported by the evidence."

Indeed, Dr. Dight's opinion was inconsistent with the opinions of Dr. Adams and Dr. Mintz.  Dr. Dight's opinion was consistent with the opinion of Jeffrey Copeland, an ARNP at the Guidance Center, who treated Plaintiff.  Copeland also provided a mental Medical Source Statement, dated May 26, 2010.  But, the treating records from the Guidance Center ended in 2006.  And, while "acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licenses podiatrists, and qualified speech-language pathologists,[16] they do not include nurse practitioners.[17]  Rather, nurse practitioners are

---

[13]SSR 96-5P, 1996 WL 374183, at *2 (July 2, 1996).

[14]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374188, at *5 (July 2, 1996)).

[15]*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

[16]20 C.F.R. § 416.913(a).

[17]20 C.F.R. § 416.913(d).

considered "other medical sources" from whom the ALJ will accept and use evidence showing the severity of a claimant's impairment and how the impairment affects the claimant's ability to work.[18]

Moreover, the ALJ properly found little evidentiary support for Dr. Dight's opinion that Plaintiff suffered extreme limitations in many areas of mental functioning.  Generally, the reason that treating physicians' opinions are accorded controlling weight is that they have a history of treating the claimant, a familiarity with their symptoms and limitations, and presumably a record of their treating history that lends support to their opinions about prognosis and limitations.  But here, Dr. Dight provided no treatment records, other than a one page narrative letter and a two page Medical Source Statement form.   In the cover letter, Dr. Dight generally outlined her diagnosis and symptoms of Plaintiff and reported "[s]ince October 2009, Ms. Domann's condition has not responded to medication or psychotherapy."  But Dr. Dight provided no *contemporaneous* notes or findings made during the course of the period of treatment.  In short, Dr. Dight's opinions are not supported with any evidence created during the course of her treatment of Plaintiff.  Nor does the record include any contemporaneous treatment notes from The Guidance Center, where Plaintiff was treated by Jeffrey Copeland, ARNP; the only records from that provider were a treatment record ending in 2006 and a medication log through 2009.

While not finding sufficient evidentiary support to give controlling weight or deference to the opinion of Dr. Dight, the ALJ gave substantial weight to the opinion of Dr. Adams, the consulting psychologist, and great weight to the opinion of Dr. Mintz, the psychologist who examined Plaintiff.  In doing so, the ALJ explained how these opinions enjoyed evidentiary

---

[18]*Id.*

support, and also gave specific, legitimate reasons for disregarding the treating physician's opinion.[19]   Upon de novo review, this Court agrees with the ALJ, that the opinions of Dr. Adams and Dr. Mintz were "consistent with the evidence as a whole," while the opinion of Dr. Dight was not.

Moreover, substantial evidence in the record supports the opinions of Drs. Adams and Mintz, not Dr. Dight.   For example, while Plaintiff's GAF scores have ranged from the 40s to the 60s, in 2009 Dr. Mintz provided a GAF score of 55, although her highest score from 2008 to 2009 was 60 and Jeffrey Copeland, ARNP had provided a GAF score of 65.  As the ALJ found, the evidence supported a finding that Plaintiff's limitations are mild or moderate overall, based on her most common GAF scores, based on her activities of daily living, and based on the contemporaneous medical records.  Plaintiff reported that her daily activities included caring for her young child, with the help of Plaintiff's parents.  But there was no indication that without her parents' assistance Plaintiff was unable to care of her child.  In fact, Plaintiff testified that she often takes her daughter to school activities, and that she is able to cook simple meals and do the laundry.  Other self-reported information indicates that Plaintiff's limitations are mild and moderate as described by Drs. Adams and Mintz, not extreme as described by Dr. Dight.  For example, Plaintiff reported that she is "good" at following written instructions and "fair" at following spoken instructions.

The ALJ properly evaluated the opinions of the psychologists, considering the requisite specific factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind

---

[19]*See Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[20]   When a treating physician's opinion is inconsistent with other medical evidence, the ALJ must examine reports of other physicians to see if they outweigh the reports of the treating physician.[21]   The ALJ ultimately must weigh and resolve evidentiary conflicts, and the Court cannot reweigh the evidence.[22]   The Court finds that the ALJ properly followed these directives in weighing the opinions of the psychologists.

Plaintiff protests that at the time of Dr. Mintz's examination, June 24, 2009, she had not yet experienced a psychological trauma, her discovery that her boyfriend had molested her daughter.   This, Plaintiff argues, contributed to a significant decline in her mental health, which Dr. Dight described in her June 14, 2010 cover letter, "...in 2009, her physical and psychological condition had deteriorated dramatically– primarily as a result of the trauma her young daughter suffered last year."   But Dr. Adams apparently took this into account, noting in her July 2009 narrative explanation that a "recent relationship problem has caused her great distress."[23] Moreover, Dr. Dight's records provide no further detail or explanation of how this event affected Plaintiff.

---

[20]*Id.* at 290 (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

[21]*See id.*

[22]*Rutledge v. Apfel,* 230 F.3d 1172, 1174 (10th Cir. 2000); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

[23]Tr. 483.

To be sure, the only evidence that Plaintiff's condition worsened in 2009 after she discovered her child was abused, is the letter from her treating doctor, Dr. Dight.  The ALJ considered but gave little weight to Dr. Dight's opinion, and this Court cannot find that the ALJ erred.  Even if Dr. Mintz's and Dr. Adams's opinions were rendered before Plaintiff suffered this new trauma, the ALJ properly gave little weight to the opinion of Dr. Dight for several reasons. First, Dr. Dight's assessment of the deterioration of Plaintiff's condition is obviously based upon Plaintiff's self-reported and subjective complaints of sleep disturbances, passive suicidal ideation, minimal ability to get along with people, distrust of people, and tendency to become argumentative and defensive when interacting with people.  Although Dr. Dight diagnosed PTSD, her letter does not explain or detail the diagnosis, and she does not indicate that she performed a mental status exam, or assessed plaintiff's GAF.  In short, Dr. Dight's opinion is not ambiguous or confusing, but it is on its face not supported by objective medical findings or clinical observations.  Nor is there other evidence in the record supportive of Dr. Dight's opinion.  Plaintiff continued to be seen at the Guidance Center through October 2009, according to their medication logs, yet there is no evidence from that provider that is supportive of Dr. Dight's opinion either.  Therefore, the Court concludes that the ALJ properly considered but gave little weight to the opinion of Dr. Dight.

Plaintiff argues that a remand is appropriate because of the lack of Dr. Dight's treatment records.   This Court disagrees.   While the Commissioner must recontact a treating physician when the information the doctor provides is inadequate to determine whether the claimant is disabled, the Commissioner is not required to recontact a treating physician simply because the

ALJ rejects the treating physician's opinion.[24]  Here, the AlJ expressly considered but gave little

weight to the opinion of Dr. Dight, finding that it lacked substantial evidentiary support.  Indeed,

Dr. Dight opined that Plaintiff had a number of extreme limitations, when the record established

that Plaintiff's limitations were mild or moderate at worst.  On this basis, the ALJ properly gave

little weight to Dr. Dight's opinion, and there was no obligation to contact Dr. Dight for further

records or justification.  In fact, Dr. Dight provided a narrative cover letter, giving some

treatment history, and a medical source statement with check box opinions, although no narrative

explanation.  As Plaintiff argues, Defendant cannot reject a treating physician's opinions simply

because it was rendered on a check box form without explanation.[25]  But here the ALJ did not

accord little weight to Dr. Dight's opinion for this reason.  Rather, the ALJ accorded little weight

to Dr. Dight's opinions because there was not substantial evidentiary support, and her opinions

were inconsistent with other credible opinions from Drs. Adams and Mintz.

### B.    Physical Impairment- Obesity

Plaintiff also contends that while the ALJ found that her obesity was a severe impairment

at step 2, at step 3 the ALJ did not properly consider the effect of her obesity, in accordance with

SSR 02-1p,[26] and thus failed to properly determine its severity and impact.   Yet, the ALJ

---

[24]*Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing  20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.")); *See also McDonald v. Barnhart*, 358 F. Supp. 2d 1034, (D. Kan. 2005) (ALJ had no duty to contact treating physician, where the ALJ gave little weight to the treating physician's opinion because it was inconsistent with other evidence, including the physician's own treatment notes, and plaintiff admitted that the physician had filled out the form based on plaintiff's subjective complaints.).

[25]*See Anderson v. Astrue*, 391 F. App'x 712, 723 (10th Cir. 2009).

[26]SSR 02-1P, 2000 WL 628049 (Sept. 12, 2002).

expressly stated that she had considered all of the evidence,[27] and as the Tenth Circuit has noted, where the ALJ states that she has considered all the evidence, "'our general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter.'"[28]

Moreover, from the ALJ's references to the evidence, it is clear that she did in fact consider all of the evidence in this case, including the evidence concerning Plaintiff's obesity. The ALJ gave weight to the opinions of Dr. Alan Cornett, who performed an consultative physical examination of Plaintiff on June 13, 2009, the ALJ expressly noting that "Cornett also stated that the claimant's symptoms may be exacerbated by obesity."[29]  Cornett's examination revealed that Plaintiff's ability to walk was unimpaired, that her range of motion of the joints was normal, that she could raise both legs to 90 degrees, that she could bend 12 inches to the floor and that there were no paraspinous muscle spasms.  These were Dr. Cornett's findings, including whatever exacerbative effect Plaintiff's obesity had on her musculoskeletal functioning.

Although the ALJ did not reference  SSR 02-1P[30] in her decision, she applied the regulation, obviously considering Dr. Cornett's findings concerning Plaintiff's musculoskeletal impairments, and in light of her obesity.  The regulation provides that obesity by itself will be found to be medically equivalent to a listed impairment, if the obesity causes the same functional limitations as another impairment, such as impairments in the musculoskeletal, respiratory or

---

[27]Doc. 10-2 at 14.

[28]*Flaherty v. Astrue.*, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

[29]Tr. 19.

[30]SSR 02-1P, 2000 WL 628049 (Sept. 12, 2002).

cardiovascular systems.[31]   The ALJ obviously properly followed the directives of SSR 02-1P to consider the preface of the musculoskeletal listing for guidance about the potential effects obesity has in causing or contributing to impairments in that body system,[32] noting that Dr. Cornett found that Plaintiff had no limitation in her ability to ambulate, a key consideration in determining whether there is a loss of function emanating from a musculoskeletal impairment.[33]

And, although the ALJ did not expressly mention the effect of Plaintiff's obesity on her respiratory system, the ALJ found that Plaintiff has asthma, yet x-rays in 2005 showed Plaintiff's lungs were clear and that there was no evidence of active disease.   The ALJ also noted that Plaintiff's credibility on the issue of the degree of limitations from her asthma was questionable, in light of Plaintiff's failure to comply with medical advice to stop smoking the one to two packs of cigarettes she ingested daily.

Finally, Plaintiff makes no argument as to how her asthma is affected or exacerbated by her obesity, points to no evidence of such, and thus fails to establish that the ALJ's analysis was erroneous.   Plaintiff fails to point to any evidence in the record showing that her obesity caused any specific limitations beyond those included in the ALJ's RFC determination.[34]   In fact, Plaintiff did not allege any limitations from obesity at the ALJ hearing.[35]   The only reference to her obesity during the hearing was Plaintiff's testimony that she was 5'6", weighed 208 pounds

---

[31]Doc. 10-2, R. at 17.

[32]20 C.F.R. §§ 404, subpt. P., app. 1.

[33]*Id.*

[34]*See Fields v. Barnhart*, 83 F. App'x 993, 997 (10th Cir. 2003) (noting plaintiff failed to cite to any evidence in the record showing that her obesity affected her ability to engage in basic work activities.)

[35]*Briggs v. Astrue*, 221 F. App'x 767, 770–71 (10th Cir. 2007) (noting plaintiff did not testify that his weight contributed to his inability to engage in activities in any way).

and had recently lost a lot of weight which she had maintained.[36]  The medical records confirm that Plaintiff had lost a significant amount of weight by the time of the hearing; she had weighed as much as 240 in January 2008.[37]

**V.**      **Conclusion**

For these reasons, the Court concludes that the ALJ did not err in finding Plaintiff not disabled at steps three, four or five.  Accordingly the decision of the Commissioner will be affirmed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: May 23, 2012

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[36]Tr. 37.

[37]Tr. 324.